Good morning, Your Honors. I'm John Alcorn. I represent the petitioner. I would gladly, if the Court allows, defer to the government to present their position and reserve my time for questioning Mary Buttle. All right. If that's how you want to proceed, then does anyone have any questions for Mr. Alcorn preliminarily? Are you familiar with the California case that in the context of the admissibility of prior convictions held that Section 242 or 240, whatever the number is, is a crime of moral turpitude? I am somewhat familiar with that, Your Honor. But as the Court knows, my client was convicted by a jury of that crime, and the record stands as it is. And my office made the argument before this Court and at the BIA that it was not a crime involving moral turpitude. That's not our strongest position, I know, but in light of the recent Ninth Circuit case, which we cited in our 28-J letter, we believe that my client only has one conviction for a crime involving moral turpitude. But that wasn't raised before the BIA, was it? No, Your Honor, because we didn't have the new Ninth Circuit case on burglary. Is that a sufficient excuse? Yes, because I don't think we can be expected to know future decisions of this Court. But you can be expected to come up with arguments based the people in that case managed to figure out that there was a problem with that statute, which is a fairly self-evident problem. You just have to know something about California burglary law to know that this is, in fact, a second-degree burglary. That is, essentially, the crime is basically going into a store intending to commit a felony. That's the crime, right? Right. You didn't actually have to commit a felony or rob anybody or break into anything. Right. Yes, Your Honor. So given the fact that it's a rather – it doesn't resemble what one usually thinks of as burglary, one might have come up with a problem. I totally agree. We did make an argument that we didn't think it was a crime involving moral turpitude. No, you didn't. I don't think you ever did. Where did you? Well, I thought we did. Maybe we didn't. I'm sorry. All right. So you want to reserve the rest of your time? Yes, Your Honor. All right. Thank you. Good morning, Your Honors, and may it please the Court. Daniel Cimolo on behalf of the Respondent. As an initial matter, I'd like to draw the Court's attention to a jurisdictional issue separate from the exhaustion one you just discussed. We do believe that under this Court's precedent in 1252A1, the Court does have jurisdiction to review the asylum claim. Turning our attention to the burglary conviction, that we feel the Court does not have jurisdiction because it was not an exhausted claim under 1252D1. If I could now – What was the jurisdiction issue you were drawing our attention to? We argued in our brief that the Court does not have jurisdiction – Oh, I see. You're changing that. Yes. With regard to the – even though your colleague seems to want to avoid – concede the attempted sexual assault, is that what it's called? I'm not at all convinced that it's a crime of moral torture. At least I'd like to know why it is. My understanding of that sexual crime is that although it's called – what is the name of the crime? Attempted – Attempted sexual battery. In fact, it doesn't have to be sexual. I mean, my understanding is if you kick somebody in their buttocks, that would be a violation of the crime. Not quite, Your Honor. And here's why. Under California law, and I'll cite to the California Model Jury Instruction 16.145, in addition to an unwanted touching in a – in a private part of the person, one needs to – excuse me, California must prove beyond a reasonable doubt specific intent for one of three things, either sexual arousal, sexual gratification, or for sexual abuse. Right. And what's the definition of sexual abuse? Sexual abuse is, as I – as I understand California law, and my understanding may well be imperfect, that it's essentially to, you know, cause the offense of touching in a sexual manner. I thought that sexual abuse was defined in a way that has no sexual – no necessary sexual content. Let me see if I can find it. The – so – And there's some California case law. California case law. For example, Shannon T., the court said that the words of the sexual battery statute do not require that the harm inflicted be of a certain seriousness. It is sufficient that the prohibited touching cause the victim to feel insulted, humiliated, or intimidated. So that doesn't sound like the California courts are interpreting it to be necessarily contain a sexual element. Shannon T., if I recall, was involving a minor. And, you know, I think it's the fact that it goes to the – it's two factors, really. It's the fact that it goes to an intimate part of the victim's body that makes it sexual in nature, and that's what elevates it from a simple battery. Right. And Shannon T., the defendant, poked the victim's rear end and started laughing, and the act was done for the purpose of insulting or humiliating her, and therefore it was held to be abuse. Yes. I think – isn't that similar to Judge Brezon's example? I think it – it is certainly similar. I agree with Your Honor as to that. But I think the fact that it goes specifically to the intimate part of the body is what makes it a crime and what differentiates it from a more garden-variety battery in California. Jerry here was instructed that the specific intent to cause sexual abuse means a purpose to injure her, cause pain, or cause discomfort. It does not mean that the perpetrator must be motivated by sexual gratification or arousal or have a lewd intent. It goes, then, to the sexual abuse. That is the abuse. It is – it is harming somebody. Injuring, hurting, causing pain, or causing discomfort. That's the abuse. Coupled with the fact that it's an intimate part of the body, that is what makes it a sexual abuse, yes. Intimate, including your backside. Under California law, yes, that's correct. So how can this be an aggravated – We know that – I mean, the ground level is that battery is not, in general, a CIMT, but an aggravated battery can be. An aggravated battery has basically meant serious injury or something that's actually sexual. And this just seems to me to be out of it, outside of those categories. If I could draw the Court's attention to a somewhat recent case. It's a Nunez case. It appears at 594-3-1124. That involved an indecent exposure under California law. And the Court held that indecent exposure is, in fact, not a crime involving moral turpitude. Now, in that case, the Court delineated three guidelines as to what elevates a sexual crime into a crime involving moral turpitude. And the three guidelines are the intent to harm the victim, the actual infliction of harm to the victim, or the victim is a protected class, such as a minor. Now, in Nunez, the Court held that indecent – excuse me – indecent exposure is not a crime involving moral turpitude. Well, this certainly doesn't have any of those elements. It doesn't, other than the fact – and that's why these are simply guidelines, as I read the Nunez opinion. Well, tell me, though. I mean, so far we don't seem to have an argument for why it's an aggravated battery. Why is it? Why is it? What's your argument? Because it's intimate parts of the body, even though under – overclosed and not so intimate? Yes. It's a sex crime. And that invariably – But it isn't a sex crime. We just established that it can – it doesn't have to actually have a sexual component, even though it's called sexual. It is a specific intent that the government must prove, and did prove in this case, for sexual arousal, sexual gratification, or for sexual abuse of the victim. But sexual abuse is defined as not – Didn't we just go down a line where we saw that sexual abuse doesn't – isn't really sexual? Well, I think that's a broad reading of Shannon Teague. Can I ask you a slightly different question? I mean, suppose that we were to find that attempted sexual battery was not categorically a crime involving moral turpitude. What is in the record here about the actual crime of conviction that Mr. Perez-Martinez suffered? There's very little in the record as to this particular conviction. We know that there was – there was a stipulation that the bodily fluid was saliva and that the bodily fluid was on the victim's crotch. And my best memory, and I'm fairly certain it's accurate, is that the victim was clothed at the time. So basically, we can infer that he spit on the victim? I – there are numerous inferences to draw to how his saliva ended up where it did. I don't know when the record is fully and clear as to that. What's your best case – I mean, what's your best – what are your best documents in case that this is a crime of moral turpitude under the modified categorical approach? If this Court rules that attempted sexual abuse – excuse me, attempted sexual battery is not a categorical crime – excuse me, a crime involving moral turpitude, then I would believe that a ventura remand would be necessary for the Board to consider whether, under the modified categorical approach, it's suffice here. It's actually supposed to put in the underlying documents into the government, isn't it supposed to put in the underlying record of conviction? Yes, Your Honor, and this was a jury case. So we do have the jury's verdict, which shows that, you know, the jury did convict him. We don't have a police report in this case. It's not clear to me whether it was unavailable or whether – Well, the police report isn't really one of the operable documents that we can consider, isn't it? I mean, there's only a handful of documents we can actually look at, like the record of conviction. Sure, the charging document. Charging document or a plea agreement. So we couldn't look at the police report. I was not clear. I thought under Shepard perhaps you could, but I won't press the issue. Isn't the bottom line if we have to go to the modified categorical approach, you lose? Yes, that's correct. Lose to the point where it has to go back to the board. Why does it have to go back to the board? Because they would need to do the modified categorical approach under Ventura. But isn't the record pretty clear that they couldn't do it? It may well be pretty clear, but, you know, again, it's up to the agency in the first instance to make that determination. May I have a practical question? Given the fact that I understand you have an exhaustion argument with regard to Hernandez-Cruz, but leaving aside the exhaustion argument, do you see any reason why this case isn't covered by Hernandez-Cruz? No, I don't. Would you be willing to mediate this? You have that issue, and then you have the issue with regard to this very strange sexual abuse crime which doesn't seem to have any sexual in it, maybe. Sure. So would the agency be willing to go to mediation on this case? In light of Hernandez-Cruz, I think, you know, this would be really a decision for the Department of Homeland Security to decide whether they would jointly move to reopen. Didn't you ask them? I did not ask them. I didn't. I might have. I simply didn't have the time between the time that the 28-J letter was filed and my travels to California. Didn't you do any research aside from the 28-J letter to find out about the case? I'm sorry? You didn't know about the case until you got the 28-J letter? I did not, Your Honor. Well, it just seems I agree with Judge Berzon that as a practical matter, he was denied cancellation of removal for having committed two crimes of moral turpitude. So if we were to find that either one of them was not a crime of moral turpitude and it seems that under Hernandez-Cruz the burglar one isn't, then he should be entitled to that relief. Well, as I understand, Hernandez-Cruz, it was really up to the agency to – in Hernandez-Cruz, it was not a crime involving moral turpitude. But as I understood the opinion, it theoretically could be. And, again, it would require a modified categorical approach to determine. That's why I just asked you the question. You said that you were in agreement that if there wasn't an exhaustion problem, that this case would be covered by that. And I understood you to say that it wouldn't be a crime of moral turpitude. I think that's that last point. Maybe I misunderstood it. I'm sorry? Maybe I misunderstood your answer. I am with Your Honor 100 percent until the last point that it is not. You're saying it isn't necessarily a crime of moral turpitude. It should be remanded to the agency. Exactly, Your Honor. That's precisely what I'm saying. Why go through all that, given what we know about the crimes that occurred here? That's the point. Why not just – maybe you just can't cancel. I mean, maybe he's just eligible for that relief, and you can just decide that rather than remanding and going through all that process. Well, again, that would be something for the agency, and particularly the Department of Homeland Security, to determine whether it wishes to exercise its discretion on that point. We know – Exercise its discretion to mediate? Excuse me, not to mediate, but to determine whether it would move jointly to reopen the case before the Board of Immigration Appeals. Now, why would you have to do that? If we were to refer this appeal to mediation, it's still an open case, right? It is an open case insofar as, of course, this Court. But it is not an open case with respect to the removal order, which remains valid. I thought that the agency – that there was a recently issued – because we've been around about this with the agency many times, and I thought there was a recently issued memorandum which said that there was prosecutorial discretion up and down the line, including in your office, with regard to questions like whether to mediate, whether to go forward with a prosecution, I mean, frankly, that he – but for a possible procedural argument, he is probably not – has committed two crimes of moral turpitude. And why you want to treat him as if he did when we know he didn't and go through complicated procedural hoops when according to this memorandum you have prosecutorial discretion now, I don't quite understand. Are you familiar with the memorandum? I am familiar. The Holder Memorandum? And there were two, weren't there? I'm familiar with the Morton Memorandum. Okay. Which, of course, is U.S. Immigration and Customs Enforcement, and we work closely enough with them that I appreciate Your Honor's point. It technically does not bind us, but for all intents and purposes, I would treat it, you know, in that manner in respect to – So if you were to suspend – vacate the submission or suspend the submission in this case and ask you to go back and find out whether there was a willingness to mediate now instead of going through more procedural hoops, could you do that? That may well be the best way to go. Again, just to make it abundantly clear, I can go back and ask. I can press, you know, I can press Your Honor's point as to why that might be appropriate. What I cannot do is tell the Department of Homeland Security and specifically U.S. Immigration and Customs Enforcement what to do. Wait. I thought that these memos – I think there were two of them. There are several. Okay. They delegated that authority to the individual prosecutors or lawyers. That's you, right? It's so very confusing. It's actually not me. It is the ICE attorneys, the Immigration and Customs Enforcement here in Los Angeles, who are now, since the Homeland Security Act, we are separate. Our job with the Office of Immigration Litigation is to defend board decisions. We certainly work closely with Immigration and Customs Enforcement, but they are the ones who have the discretion. We work closely enough that we know each other, and I can make recommendations, and they can listen to them or not as they see fit. But I just hope Your Honors understand that ultimately it is not my discretion to exercise. All right. So if we were to – I mean, from a litigation standpoint, would you prefer that we just go ahead and roll on this or that we vacate submission and issue an order requiring mediation and then seeing how it goes? I think at this point, you know, and especially since Hernandez-Cruz is so recent, I think the agency might want to take a look at it. I would ask the court to actually suspend the ruling on this case so that we have the opportunity to do so. I think that's most equitable here. And, again, while I can't – We can do that by sending you the mediation, and then the mediation either works or it doesn't work. And then, right, if it works, you know, everything is supposed to start again to some degree, or perhaps, you know, fleshing this out, perhaps there would be no charges. Although, you know, how Mr. Perez would remain here, that's a separate issue entirely, certainly. Well, he would be eligible for cancellation of removal, right? That's correct. Assuming – yes, I mean, that's too far down the road. I think – But, anyway, you'd be comfortable with our simply vacating submission or delaying submission. And what we usually do is say you should explore with one of our mediators whether mediation is worthwhile, and then somebody reports back to us whether you're going to go forward or not. I think that's a worthwhile endeavor at this point. All right. Well, thank you, and we appreciate that. Is there anything else you want to add? No, thank you. If there are no further questions, I'd ask for mediation, I suppose. I think that's most equitable in this instance. All right. Well, thank you. Thank you. And, Mr. Alcorn, do you have anything that you wish to add? I think mediation would be a great thing, Your Honors. All right. Thank you. Thank you very much. Perez Martinez will not be submitted. We will defer submission on this case and issue a mediation order. Thank you very much, Counsel.
judges: Whyte, Wardlaw, Berzon